---

**Fill in this information to identify the case:**

Debtor Name  PS On Tap, LLC, *et al.*

United States Bankruptcy Court for the:  Central _____ District of California
(State)

Case number:  1:21-bk-10757

---

☐ Check if this is an amended filing

Official Form 425A

---

# Plan of Reorganization for Small Business Under Chapter 11        02/20

## Debtors' Joint Plan of Reorganization dated April 28, 2021.

**Background for Cases Filed Under Subchapter V**

### A.        Description and History of the Debtor's Business

For over 30 years, the Debtors[1] have owned and operated a chain of restaurants featuring upscale casual and fine dining experiences under three unique concepts:  a luxury steakhouse reminiscent of the American grills in the 1930's and 1940's operating under the name *The Grill on the Alley*; a family-friendly grill operating under the name *Daily Grill Restaurant & Bar*; and a school-themed Gastropub operating under the name *Public School on Tap*.  The Debtors' restaurants are located primarily in Southern California with additional restaurants located throughout other major cities in the United States.

The emergence of the global coronavirus pandemic and the resulting governmental restrictions on dine-in services, however, have completely devastated the entirety of the Debtors' retail dining operations.  The Debtors have implemented drastic cost-cutting measures to safeguard and maintain its business operations.  However, the Debtors have been prevented from operating at full capacity due to the extended periods of governmental restrictions on in-door dining.

Currently, the Debtors are operating eight (8) restaurants, they are also managing three (3) additional restaurants through management agreements with various hotels, they have closed fourteen (14) locations, and they are planning to reopen certain of the closed locations as market conditions improve.

As a result of the financial devastation wrought by the pandemic and the associated government restrictions on dine-in service, the Debtors have been unable to generate sufficient cash flows to cover their operating expenses, including primarily lease obligations and tax liabilities, and as a result, they have amassed unprecedented liabilities that cannot be sustained.

Accordingly, on April 28, 2021 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief pursuant to subchapter V of chapter 11 of the Bankruptcy Code in order to restructure their liabilities, to shed unprofitable

---

[1]        PS On Tap, LLC ("PS On Tap"), Grill Concepts, Inc., a California corporation ("GC California"), Grill Concepts, Inc., a Nevada corporation ("GC Nevada"), Grill Concepts Services, Inc. ("GC Services"), Grill Concepts Management, Inc. ("GC Management"), GCI-MP, Inc. ("GCI-MP"), PS 303, LLC ("PS 303"), Shift Bar, LLC ("Shift Bar"), GCI-CC, Inc. ("GCI-CC"), and Grill Concepts - D.C., Inc. ("GC-DC") (collectively, the "Debtors").

Debtor Name: <u>PS On Tap, LLC, *et al.*</u>                                                    Case No. _____

locations, and to retain the profitable locations.  Upon reorganization, the reorganized Debtors will be well-positioned to take advantage of the anticipated rebound in the hospitality sector that will coincide with the vaccine rollout and generate significant value for the creditors.

## B.      Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

The **Liquidation Analysis** is attached hereto as **Exhibit A**.  The Liquidation Analysis demonstrates that in a hypothetical Chapter 7 liquidation, the general unsecured creditors of the Debtors are projected to receive **<u>0% to 2.2%</u>**.

The low distribution rate is due primarily to the fact that there are large priority payroll tax claims of approximately $4.5 million, which must be paid before any payments may be made to the general unsecured creditors.  As demonstrated in Exhibit A, the liquidation value of the Debtors (net of administrative priority expenses) will be largely consumed by the significant priority tax claims that are currently outstanding, thereby leaving minimal, if any, distributions to the general unsecured creditors in a hypothetical chapter 7 liquidation.

## C.      Ability to make future plan payments and operate without further reorganization

As noted above, the Liquidation Analysis (Exhibit A) demonstrates that in a hypothetical Chapter 7 liquidation, the general unsecured creditors are projected to receive 0% to 2.2%.

In contrast, under this proposed Plan of Reorganization, it is estimated that general unsecured creditors will receive approximately **<u>16.6% to 40%</u>** over the course of the 4-year Plan Period on account of their allowed claims, which is materially greater than the 0% to 2.2% projected recovery under a chapter 7 liquidation.

Attached hereto as **Exhibit B** is the **Feasibility Analysis**, which demonstrates that the Reorganized Debtors will have enough cash over the life of the Plan to make the required Plan payments and operate the Reorganized Debtors' business.

The payments due under the Plan and the Reorganized Debtors' business operations will be funded by the cash on hand and the net income projected to be generated by the Reorganized Debtors' restaurant operations over the course of the 4-year Plan Period.

In addition, the Debtors' insider [Class 3(c)] has agreed to subordinate its $35.5 million claim against the Debtors' estates conditioned upon the confirmation of the Plan of Reorganization, thereby greatly enhancing the projected distributions to the general unsecured creditors under the Plan.

The Feasibility Analysis further demonstrates that the Reorganized Debtor will be able to pay the approximately $4.5 million in priority payroll tax claims in approximately Years 1-3 under the Plan.  (The trust fund portion of the priority tax claims will be paid first, followed by the payment of the balance of the priority tax claim – all of which are projected to be paid off in approximately Years 1-3 of the Plan).

By Year 4 of the Plan, it is projected that the general unsecured creditors [Class 3(d)] will be able to receive between 16.6% to 40% in distributions on account of their allowed claims.  The projected distribution rate to the general unsecured creditors will increase from 16.6% to 40% if the Debtors are authorized to assume the lease for the Graton location, which would generate significant positive net revenues over the course of the 4 year Plan Period, resulting in a significantly higher distribution rate to the general unsecured creditors.

Finally, under the Plan, Critical Vendors [Class 3(a)] (*i.e.*, creditors which are deemed by the Debtors to be critical vendors and which extend normal trade credit terms of 30 days or more to the Debtors) will be paid the <u>*greater*</u> of:

Debtor Name: PS On Tap, LLC, *et al.*                                                        Case No. _____

(i) 35% of their allowed claim amortized over two (2) years, paid quarterly, commencing on the Effective Date of the Plan, or (ii) the percentage available to the general unsecured creditors [Class 3(d)].

The financial projections further show that the Reorganized Debtors will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of approximately $6.4 million to $8.25 million.

The final Plan payment is expected to be paid 4 years after the Effective Date.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the Plan) under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of the Debtors from cash on hand and cash flow from operations.

This Plan provides for:   No (0) class of priority claims;

One (1) class of secured claims;

Four (4) classes of non-priority unsecured clams; and;

One (1) class of equity security holders;

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 16.6 cents to 40 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1:  Priority** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| | | **There are no creditors in this class.** |
| 2.02 | **Class 2:  Secured** | The claims of County tax collectors for personal property tax, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 3: Unsecured** | All non-priority unsecured claims allowed under § 502 of the Code, as follows: |
| | | **3(a) Critical Vendor Claims:**  Allowed general unsecured claims of creditors which are |

Debtor Name: <u>PS On Tap, LLC, *et al.*</u>                                                                    Case No. _____

deemed by the Debtors to be critical vendors and which extend normal trade credit terms of 30 days or more to the Debtors.

**3(b) Labor Claims With Insurance:**  Allowed general unsecured labor claims with insurance coverage.

**3(c) Insider Claims:**  Allowed general unsecured claims of insiders.

**3(d) Other General Unsecured Claims:**  Allowed general unsecured claims whose claims are not satisfied in Classes 3(a)-(c).

| 2.04 | **Class 4 – Equity** | Equity ownership will retain its interest without change. |

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid in full with interest of 3.25% per annum amortized over three (3) years from Petition Date, to be paid quarterly with such payments earmarked to first satisfy the trust fund portion of such allowed tax claims. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

Debtor Name: <u>PS On Tap, LLC, *et al.*</u>                                      Case No. _____

---

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01    **Claims and interests shall be treated as follows under this Plan**:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1: Priority** | N/A | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).<br><br>**There are no creditors in this class.** |
| **Class 2: Secured** | Unimpaired | The claims of County tax collectors for personal property tax, to the extent allowed as a secured claim under § 506 of the Code, will be paid in full on the Effective Date of the Plan. |
| **Class 3(a) Critical Vendor Claims** | Impaired | Allowed general unsecured claims of creditors which are deemed by the Debtors to be critical vendors and which extend normal trade credit terms of 30 days or more to the Debtors will be paid the greater of: (i) 35% of their allowed claim amortized over two (2) years, paid quarterly, commencing on the Effective Date of the Plan; or (ii) the percentage available to Class 3(d) claims, if greater.<br><br>Holders of Class 3(a) claims are impaired and entitled to vote on the Plan. |
| **Class 3(b) Labor Claims With Insurance** | Impaired | Allowed general unsecured labor claims with insurance coverage will receive the same treatment as creditors in Class 3(d) with respect to the portion of the claim not covered by insurance, plus recovery from the insurance carrier for the insured portion of the claim.<br><br>Holders of Class 3(b) claims are impaired and entitled to vote on the Plan. |
| **Class 3(c) Insider Claims** | Impaired | Allowed general unsecured claims of insiders will be subordinated to the claims of all other creditors, with the subordination conditioned upon the confirmation of the Debtors' Plan.<br><br>Holders of Class 3(c) claims are impaired and entitled to vote on the Plan. |
| **Class 3(d) Other General Unsecured Claims** | Impaired | Allowed general unsecured claims whose claims are not satisfied in Classes 3(a)-(c) will receive a pro-rata share of the Debtors' disposable income for the four (4) year period following the Effective Date of the Plan, to be paid annually after the claims of other classes are first satisfied.<br><br>Holders of Class 3(d) claims are impaired and entitled to vote on the Plan. |

Debtor Name: <u>PS On Tap, LLC, *et al.*</u>                                                                Case No. _____

| Class | Impairment | Treatment |
|---|---|---|
| **Class 4 – Equity** | Unimpaired | Equity ownership will retain its interest without change. |
|  |  | Holders of Class 4 equity interests are unimpaired and deemed to accept the Plan |

## Article 5: Allowance and Disallowance of Claims

5.01    **Disputed claim**    A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i)    a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)    no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    **Delay of distribution on a disputed claim**    No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    **Settlement of disputed claims**    The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01    **Assumed executory contracts and unexpired leases**    (a)    Certain of the Debtors will assume, and if applicable assign, the executory contracts and unexpired leases set forth on **Exhibit C** as of the Effective Date of the Plan, provided, however, that the Debtors reserve their rights to (i) modify Exhibit C and remove contracts until the Effective Date of the Plan and (ii) file a separate motion to assume or reject certain unexpired executory contracts until the Effective Date of the Plan.  To the extent that the Debtors modify Exhibit C, they will file an appropriate notice of modification with the Court prior to the Effective Date of the Plan.

(b)    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45th days after the date of the order confirming this Plan.

Debtor Name: <u>PS On Tap, LLC, *et al.*</u>                                                                                    Case No. _____

## Article 7: Means for Implementation of the Plan

[Insert here provisions regarding how the plan will be implemented as required under § 1123(a)(5) of the Code. For example, provisions may include those that set out how the plan will be funded, including any claims reserve to be established in connection with the plan, as well as who will be serving as directors, officers or voting trustees of the reorganized Debtor.]

The Debtors are confident that the Debtors have sufficient cash on hand and will generate sufficient positive cash flow from their operations to pay their debts as and when they become due and payable, as reflected in Exhibit B.

## Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:<br><br>N/A |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate governance** | The Debtors shall amend their respective organizational documents to prohibit the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code. |

Debtor Name: <u>PS On Tap, LLC, *et al.*</u>                                                  Case No. _____

| | | |
|---|---|---|
| 8.08 | **Retention of Jurisdiction** | Retention of Jurisdiction.  After confirmation, the Court retains and may exercise jurisdiction over proceedings concerning: (1) whether Debtors are in material default under this Plan, (2) whether the time for performing any Plan obligation should be extended, (3) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed with the court, (4) whether the case should be dismissed or converted to one under chapter 7, (5) any proceedings to allow or disallow claims or administrative expenses (the court will not review professional fees incurred after the Effective Date), (6) settlements or compromises under Rule 9019, (7) any proceedings under §§ 110, 329, or 362, or regarding sanctions, and (8) any other proceedings, whether or not commenced or contemplated as of the Effective Date, regarding the implementation, interpretation, or enforcement of this Plan or the administration of the bankruptcy case or estate. |

## Article 9: Discharge

If the Debtors' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

  (i) imposed by this Plan; or

  (ii) to the extent provided in § 1141(d)(6).

If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtors will not be discharged from any debt:

  (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

  (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Debtor Name: <u>PS On Tap, LLC, *et al.*</u>                                                    Case No. _____

## Article 10: Other Provisions

[Insert other provisions, as applicable.]

Respectfully submitted,

<u>_____</u>            <u>Claude R. Cognian_____</u>
Signature of the Plan Proponent                          Printed Name


<u>_____</u>            <u>Theodore B. Stolman, Esq._____</u>
Signature of the Attorney for the Plan Proponent      Printed Name

# EXHIBIT "A"

## EXHIBIT A
## LIQUIDATION ANALYSIS

|  | WITH GRATON LOCATION* | EXCLUDE GRATON LOCATION* |
|---|---|---|
| **LIQUIDATION VALUE OF ASSETS** | | |
| Estimated Cash on Hand | $  2,700,000.00 | $  2,700,000.00 |
| Liquidation Value of Sale of Restaurants (see attached Schedule 1 - EBITDA Valuation) | $  4,017,502.50 | $  388,405.00 |
| Termination Fee for Graton | | $  800,000.00 |
| **Total Liquidation Value** | $  6,717,502.50 | $  3,888,405.00 |
| | | |
| **LESS ADMINISTRATIVE PRIORITY EXPENSES** | | |
| Sale Commission 10% | $  (401,750.25) | $  (38,840.50) |
| Priority Payroll Tax Claims | $  (4,562,564.00) | $  (4,562,564.00) |
| Bankruptcy Professional Fees | $  (500,000.00) | $  (300,000.00) |
| Additional Bankruptcy Fees, including Chapter 7 Trustee Fees | $  (300,000.00) | $  (50,000.00) |
| **Less Admin. Expenses** | $  (5,764,314.25) | $  (4,912,564.00) |
| | | |
| **NET AVAILABLE TO GENERAL UNSECURED CREDITORS** | $  953,188.25 | $  (1,024,159.00) |

**DISTRIBUTION RATE TO GENERAL UNSECURED CREDITORS IS 2.2% (WITH GRATON) AND 0% (WITHOUT GRATON):**

| | WITH GRATON | | EXCLUDE GRATON | |
|---|---|---|---|---|
| Net Available to Pay General Unsecured Creditors | $953,188.25 | | $0.00 | |
| Total General Unsecured Claims in Chapter 7 Liquidation** | $44,331,693.32 | = **2.2%** | $44,331,693.32 | = **0.0%** |

\* The Landlord for the Graton location has informed the Debtors that it wishes to terminate the lease.  The Debtors dispute that the Landlord is authorized to terminate the Graton lease.  If the Landlord is permitted to terminate the Graton lease, that would significantly reduce the liquidation value of the Debtors' restaurants.  Accordingly, these projections include two alternatives, one with the Graton location and one excluding the Graton location.

\*\* General Unsecured Claims are summarized in the attached Schedule 2.  The total amount of the general unsecured claims under a Chapter 7 liquidation is approximately $35.5 million greater than the the total general unsecured claims under a Chapter 11 reorganization.  If the Plan of Reorganization is confirmed, the insider debt ($35.5 million) will be subordinated.

## EXHIBIT A - LIQUIDATION ANALYSIS
## SCHEDULE 1 - EBIDTA VALUATION

| | WITH GRATON LOCATION | EXCLUDE GRATON LOCATION |
|---|---|---|
| Gross Sales (net of Sales Tax) Based on 2021 Financials | $ 24,607,594 | 18,994,861 |
| **Annualized EBITDA** | $ (828,543) | (2,280,182) |
| **Add back:** | | |
| - Corporate Payroll | $ 1,435,274 | 1,435,274 |
| - Corporate Payroll Benefits | $ 314,012 | 314,012 |
| - Corporate Rent | $ 73,141 | 73,141 |
| - Corporate G&A | $ 538,225 | 538,225 |
| - Corporate Legal and BK Fees | $ 647,088 | 647,088 |
| - Corporate Tax Prep Fees | $ 240,241 | 240,241 |
| **Deduct:** | | |
| Assumed incremental operating cost to buyer(s) of 8 locations in 3 states. | $ (400,000) | (400,000) |
| Payments to be made for unpaid rent - open locations. | $ (412,437) | (412,437) |
| **Adjusted EBITDA** | $ 1,607,001 | $ 155,362 |
| **EBITDA Valuation - 2.5 multiple** | $ 4,017,502.50 | $ 388,405.00 |

**EXHIBIT A - LIQUIDATION ANALYSIS**
**SCHEDULE 2 - GENERAL UNSECURED CLAIMS**

| | | |
|---|---|---|
| **Total Critical Vendor Claims** | | $   980,000.00 |
| | | |
| **Total Insider Claim** | | $ 35,500,000.00 |
| (Insider claim is subordinated if | | |
| Plan is confirmed.) | | |
| | | |
| **Other General Unsecured Claims** | | |
| PPP Loan | $ 2,500,000.00 | |
| Payroll Taxes - Penalty | $   218,011.00 | |
| Lease Rejection Claims | $ 3,233,683.00 | |
| Labor Claims (Non-Insurance) | $ 1,000,000.00 | |
| Non-Critical Vendor Claims | $   900,000.00 | |
| | $ 7,851,694.00 | $  7,851,694.00 |
| | | |
| | | $ 44,331,694.00 |

The above-reported claim amounts are estimated and include claims that
are unliquidated, and the amounts of those claims could be different once
they are liquidated.

# EXHIBIT "B"

## EXHIBIT B - FEASIBILITY ANALYSIS
## 4-YEAR PLAN OF REORGANIZATION

**PROJECTED PAYMENTS TO UNSECURED CREDITORS OVER THE 4-YEAR PLAN PERIOD:**

|  | WITH GRATON | | EXCLUDE GRATON |
|---|---|---|---|
|  | Gross Revenues (net of Sales Tax) | Distributions to Creditors | Distributions to Creditors |
| Year - 1/2 Year | $ 24,607,594.00 | $ 1,232,324.00 | $ 1,197,459.00 |
| Year 1 | $ 30,794,295.00 | $ 2,277,230.00 | $ 1,783,859.00 |
| Year 2 | $ 32,740,813.00 | $ 1,762,228.00 | $ 1,250,519.00 |
| Year 3 | $ 33,492,165.00 | $ 1,956,355.00 | $ 1,426,309.00 |
| Year 4-1/2 Year | $ 33,944,726.00 | $ 1,030,738.00 | $ 756,546.00 |
|  |  | $ 8,258,875.00 | $ 6,414,692.00 |

Further details regarding projected cash flows are available upon request.

**DISTRIBUTION RATES BY CLASS OF UNSECURED CREDITORS:**

|  | WITH GRATON | | EXCLUDE GRATON | |
|---|---|---|---|---|
| Priority Tax Claims (with interest) | $ 4,728,173.00 | 100% | $ 4,769,070.00 | 100% |
| Critical Vendor Claims | $ 391,781.00 | 40% | $ 343,000.00 | 35% |
| General Unsecured Claims | $ 3,138,920.00 | 40% | $ 1,302,622.00 | 16.6% |
|  | 8,258,874.00 | | $ 6,414,692.00 | |

**THE DISTRIBUTION RATE TO GENERAL UNSECURED CREDITORS (EXCLUDING CRITICAL VENDORS) IS PROJECTED TO BE 40% (WITH GRATON) AND 16.6% (EXCLUDING GRATON):**

|  | WITH GRATON | EXCLUDE GRATON |
|---|---|---|
| Net Available to Pay General Unsecured Creditors / Total General Unsecured Claims in Chapter 11 Reorganization | $3,138,920.00 / $7,851,694.00 = **40.0%** | $1,302,622.00 / $7,851,694.00 = **16.6%** |

4953626_1.xlsx

# EXHIBIT "C"

# EXHIBIT "C"

# LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

# TO BE ASSUMED

1.    <u>Indemnity of Claude R. Cognian</u>:  The Debtors will assume all indemnity obligations set forth in their respective organizational documents and set forth under applicable state law to defend and indemnify Claude R. Cognian from any and all claims, liabilities, and legal proceedings arising out of his employment with the Debtors.

2.    <u>PS214, Dallas</u>:  Lease, as amended, between GCI-MP, Inc. and 3700 McKinney Ltd., for the location at 3700 McKinney Ave #148, Dallas, TX 75204.

3.    <u>PS310, Culver City</u>:  Lease, as amended, between Grill Concepts, Inc., a California corporation, and Culver Salar Family Investment, LLC, for the location at 9411 Culver Blvd., Culver City, CA 90232.

4.    <u>PS702, Las Vegas</u>:  Lease, as amended, between Shift Bar, LLC, and The Shops at Summerlin North, LP, for the location at 1850 Festival Plaza Dr., Las Vegas, NV 89135.

5.    <u>Daily Grill Century LAX</u>:  Lease, as amended, between Grill Concepts, Inc., a California corporation, and HST Lessee LAX LP and Westin Operator LLC, for the location at 5410 W. Century Boulevard, Los Angeles, CA 90045.

6.    <u>Daily Grill Palm Desert</u>:  Lease, as amended, between Grill Concepts, Inc., a California corporation, and El Paseo Collection for the location at 73-061 El Paseo, Palm Desert, CA 92260.

7.    <u>Daily Grill Rohnert Park</u>:  Lease, as amended, between Grill Concepts, Inc., a California corporation, and Graton Economic Development Authority for the location at 630 Park Court #4, Rohnert Park, CA 94928.

8.    <u>PS213, Downtown, Los Angeles</u>:  Lease, as amended, between GCI-MP, Inc. and Equity Residential Management, L.L.C., for the location at 612 Flower St., Los Angeles, CA 90017

9.    <u>Daily Grill Washington, D.C.</u>:  Lease, as amended, between Grill Concepts-D.C., Inc., and Ring Associates L.L.C. for the location at 1200 18th Street NW, Washington, D.C. 20036.

10.  <u>Grill on the Alley, San Jose</u>:  Management Agreement, as amended, between Grill Concepts Management, Inc. and San Jose Grill, LLC in connection with restaurant located at 172 S Market Street, San Jose, CA 95113.

11.  <u>Daily Grill, Burbank</u>:  Management Agreement between Grill Concepts Management, Inc., and AWH Burbank Hotel, LLC in connection with the restaurant located at 2500 Hollywood Way, Burbank, CA 91505.

12.  <u>Daily Grill, Tulsa</u>:  Management Agreement, as amended, between Grill Concepts Management, Inc., and Tulsa Hotel Partners, LLC, in connection with the restaurant located at 100 E. Second Street, Tulsa, OK 74103.

13.  <u>Daily Grill, Houston</u>:  Management Agreement, as amended, between Grill Concepts Management, Inc., and IA Lodging Houston Galleria TRS, LLC, in connection with the restaurant located at 5085 Westheimer Road, Houston, TX 77056.